IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VALLEY COUNTY, IDAHO | |
| Plaintiff, | Lead Case No.  1:11-CV-233-BLW |
| v. | |
| UNITED STATES DEPARTMENT OF AGRICULTURE, et al., | **MEMORANDUM DECISION** |
| Defendants. | |
| VILLAGE OF YELLOWPINE ASSOCIATION; IDAHO RECREATION COUNCIL; CHRIS and LOIS SCHWARZHOFF; BIG CREEK LODGE AND OUTFITTERS; | Member Case No.  1:09-CV-275-BLW |
| Plaintiffs, | |
| v. | |
| UNITED STATES FOREST SERVICE; PAYETTE NATIONAL FOREST; Suzanne C. Rainville, Forest Supervisor; | |
| Defendants. | |

## INTRODUCTION

The Court has before it cross-motions for summary judgment. The Court heard

oral argument and took the motions under advisement. For the reasons expressed below,

the Court will grant the motion of the Forest Service and deny the plaintiffs' motion.

**Memorandum Decision - 1**

## FACTUAL BACKGROUND

This litigation concerns the Forest Service's closure of user-created roads in the Big Creek - Yellow Pine area, located within the Krassel Ranger District of the Payette National Forest ("PNF").  In 1995, the Forest Service adopted a Travel Management Plan and Travel Map for the PNF.  The Travel Map did not show that the Big Creek - Yellow Pine area was closed to motorized traffic, and under then-existing regulations an area was open to motorized traffic unless otherwise posted.  The Big Creek - Yellow Pine area contains roughly eighty miles of roads created by private users of the National Forest area.[1]  In the Big Creek - Yellow Pine area, many of these undesignated roads were created by private individuals using the National Forest to access private mining claims.

In 2003, the Forest Service approved the 2003 Payette National Forest Land and Resource Management Plan ("2003 Forest Plan").  The 2003 Forest Plan noted the need to revise and updated the 1995 Travel Management Plan and led to the Forest Service's adoption of the travel plan revisions at issue here.  *See* FS020885.

The PNF travel plan revision process was also undertaken because of the United States Department of Agriculture's 2005 issuance of the nationwide Travel Management Rule. *See* 70 Fed. Reg. 68,264-91 (Nov. 9, 2005).  The Travel Management Rule ("TMR") was designed to promote uniform Forest Service management of off-highway

---

[1]     Forest Service documents refer to these roads, created by private individuals through repeated use, as "user-created," "undesignated," or "unauthorized."  The Court will refer to them as undesignated roads.  According to the 2010 Big Creek - Yellow Pine Environmental Assessment, there are 77.4 miles of undesignated roads in the area at issue in this lawsuit.  *See* FS033513.

**Memorandum Decision - 2**

vehicle ("OHV") use in light of its significant growth and environmental impacts on National Forest Lands.  *Id.* at 68,264-65.  The TMR prohibits motor vehicle use on roads not explicitly designated for their use, in effect reversing the previous "open unless posted closed" policy.  *See* 36 C.F.R. § 261.13.

Pursuant to its obligations under the 2003 Forest Plan and the Travel Management Plan, the PNF presented its "Travel Management Plan Final Environmental Impact Statement" ("FEIS") to the public on April 2007. As required by federal regulation, the EIS contained a "no action" alternative (Alternative A), intended to represent the status quo option.  *See* FS081343; *see also* 40 C.F.R. § 1502.14.  Alternative A would have left 510,930 acres, approximately one-third of the PNF, open to motorized cross-country travel.  The FEIS noted that "[s]ome areas contain many miles of unauthorized road [sic] where travel impacts may be concentrated but the extent is unknown."  *See* FS18405. However, Alternative A did not propose allowing any cross-country motorized travel in the Big Creek - Yellow Pine area.  The Forest Service believed that it had prohibited cross-country motorized travel in the Big Creek -Yellow Pine since 2000 through the publication of an annual "*Backroads* Map" that showed the area as closed to cross-country motorized use.  *See* FS18445.

Each of the proposed alternatives, except for Alternative A, prohibited cross-country motorized travel in the PNF.  *See* FS018412.  The FEIS recommended adoption of Alternative E, which it described as "reduc[ing] roads and two-wheel motorized trails,

**Memorandum Decision - 3**

and provid[ing] greater ATV and OHV opportunities than Alternatives B and D, but less than Alternative C." *See* FS018315.

The PNF Forest Supervisor opted to issue separate decisions by ranger district. *See* FS019657. For the Krassel Ranger District, the Record of Decision adopted Alternative E, with some minor modifications. *See* FS019659-60. The ROD designated a small number of "unauthorized roads" as ATV trails. *See* FS019667. Otherwise, the ROD explicitly closed the entire area to motorized cross-country travel, though the Forest Supervisor again indicated that he believed the entire Krassel Ranger District was already closed to motorized cross-country travel through the *Backroads* Map. *See* FS019666.

The ROD noted a number of public comments in response to the FEIS that challenged the FEIS's characterization of the Big Creek - Yellow Pine area as previously closed to cross-country motorized use. In response, the Forest Supervisor acknowledged, "The Forest [sic] recognizes that there was some misunderstanding regarding the purpose and the enforcement of the *Backroads* Map publication. Regardless, it was used to determine the initial existing condition when beginning the travel plan." *See* FS019669. The Supervisor also committed to additional NEPA analysis to consider designating undesignated roads in the area:

> I also realize that these roads and trails that do not appear on *Backroads* Maps, but do appear on the 1995 Travel Map are important to the recreating public, and will identify ways to possibly designate some of the routes in the near future. This will take additional site-specific NEPA, [sic] but these roads and trails will be high on the project priority list for funding the analysis.

**Memorandum Decision - 4**

*Id.*

Pursuant to this commitment, the Forest Service initiated additional environmental assessment of motorized vehicle route designation in the Big Creek - Yellow Pine area. As a preliminary step, the Forest Service assembled two interdisciplinary teams to conduct travel assessments for the Big Creek area and the Yellow Pine area. The travel assessments were released in March and June of 2009. Both included an inventory of area roads, including undesignated roads, and a partial survey of their use by the public. *See* FS033295; FS033114. The road inventory in each assessment appears to rely principally on a 2002 Forest Service road inventory undertaken in the area. *See* FS033280; FS033099. The travel assessments also considered the general impact of roads on soil and water, vegetation, fisheries, wildlife, recreation opportunities, and cultural resources. Finally, the assessments made a recommendation of decommissioning or designating each of the inventoried roads. *See* FS033195-96; FS033374-75. The assessments recommended decommissioning the majority of roads. The recommendations were based on inventory data on the number and quality of stream crossing, the propensity for erosion, and the Forest Service's assessment of each road's recreational value.

In April 2010, the Forest Service published the Big Creek-Yellow Pine Travel Plan Environmental Assessment ("2010 EA"). The 2010 EA no action alternative was defined as continued management of the area "as specified in the 2008 TMP ROD," i.e., with the area closed to off-road motorized use. *See* FS033512. The EA also included two

alternatives that would have designated either 13.5 miles of currently undesignated roads for motorized use, in Alternative B, or 26.6 miles, in Alternative C.  *See* FS033513-14. The EA study team rejected from detailed consideration an alternative that would have adopted the recommendations of the Big Creek Travel Assessment and Yellow Pine Travel Assessment because, though the route closures recommended "would have best met many of the resource concerns for fisheries and water quality," the assessments did "did not take into consideration the public sentiment" in favor of maintaining existing routes.  *See* FS033511.  The EA also eliminated from detailed consideration an alternative that would have opened non-designated roads to motorized use because that policy was inconsistent with the national TMR.  *See* FS033510.

Shortly after the EA was released, also in April 2010, the Forest Supervisor issued a "Big Creek Yellow Pine Travel Plan Project Decision Notice and Finding of No Significant Impact."  The FONSI adopted the no action alternative from the EA, opting for the status quo created by the 2008 ROD.  The Forest Supervisor rejected alternatives B and C on the grounds that the additional route designation without offsetting mitigation would likely degrade fisheries through opening additional stream crossings and trails in riparian areas.  *See* FS033686-88.  However, the Supervisor indicated that he would continue to consider designation of some roads in the future, stating that "I would like to proceed from here by re-analyzing the routes in the project area with more collaborative public involvement.  This will allow the Forest to consider offsetting mitigations such as

decommissioning of unused routes."  *See* FS033685.

## LITIGATION BACKGROUND

Plaintiffs Idaho Recreation Council (IRC) and Chris and Lois Schwarzhoff filed their complaint on June 9, 2009 in what was then a separate case (1:09-cv-00275-BLW) before Idaho District Court Judge Edward Lodge. After the Forest Service issued its 2010 EA/FONSI, those Plaintiffs filed an Amended Complaint. Dkt. 26, 1:09-cv-00275-BLW. The Amended Complaint alleges that the Forest Service, in promulgating the travel management policy in the Big Creek - Yellow Pine area, violated the Administrative Procedures Act ("APA"); the National Environmental Policy Act ("NEPA"), and the National Forest Management Act ("NFMA").

Valley County filed a complaint under the instant case number on May 19, 2011. It similarly alleges that defendants' actions violate the APA and NEPA but does not allege a violation of the NFMA.

Valley County moved to consolidate the two cases on July 7, 2011.  The Court granted the motion and designated *Valley County v. United States* as the lead case.  On February 17, 2012, the IRC and the Schwarzhoffs filed the motion for summary judgment at issue here, and Valley County has joined the motion.

The Court will refer to the plaintiffs collectively as "IRC" for ease of reference, and for the same reason will refer to the defendants as the "Forest Service."

## LEGAL STANDARD

**Memorandum Decision - 7**

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Karuk Tribe of Cal. v. U.S. Forest Serv.*, – F.3d –, 2012 WL 1959231, at *7 (9th Cir. 2012) (en banc).  In an administrative record review case, a court may direct summary judgment based upon whether the evidence in the administrative record permitted the agency to make the challenged decision.  *Id.*  Under the APA, the reviewing court must set aside the agency's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  A decision is arbitrary and capricious if the agency has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *O'Keeffe's, Inc. v. U.S. Consumer Product Safety Comm'n*, 92 F.3d 940, 942 (9th Cir. 1996).  An agency action is also arbitrary and capricious if the agency fails to articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.  *Id.* Finally, an agency must set forth clearly the grounds on which it acted.  *See Atchison T. & S.F. Ry. v. Wichita Bd. of Trade*, 412 U.S. 800, 807 (1973).

## ANALYSIS

**Prudential Standing**

The Forest Service contends that the IRC lacks prudential standing under NEPA or the NFMA.  To establish prudential standing under the APA, the IRC must establish an interest that is "arguably within the zone of interests to be protected or regulated by the statute." *Clarke v. Securities Industry Ass'n*, 479 U.S. 388, 395 (1987) (internal quotation marks omitted).  To fall under NEPA's zone of interests, IRC must show that its interest is environmental or that alleged economic injuries are casually related to a NEPA-protected injury.  *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Dep't Agric.*, 415 F.3d 1078, 1103 (9th Cir. 2005).  IRC may also proceed if they establish an interest in "recreational use and aesthetic enjoyment" of the regulated area.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886 (1990).  The zone of interest requirement under the NFMA is similar: IRC must establish that its interest is in recreational use environmental preservation, or ensuring the continued diversity of plant and animal communities.  *See* 16 U.S.C. § 1604(g)(3)(B).  Standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Applying this standard, the Court concludes that each plaintiff has established standing. With respect to the IRC, the administrative record establishes that the organization's interest is in facilitating its members' access to Big Creek - Yellow Pine Roads for recreational use.  *See* FS033814, FS021916.  With respect to the Schwarzhoffs, the administrative record as well as supplemental affidavits establish that they have long

used undesignated roads in the area for recreation, birdwatching, huckleberry picking, and sightseeing. *See, .e.g.*, FS034034; *Affidavit of Chris Schwarzhoff (Dkt. No. 51-2)* at ¶¶ 6-7.  This evidence establishes that the IRC and the Schwarhoffs both have an interest in "recreational use and aesthetic enjoyment" of the area sufficient to establish prudential standing.  *Nat'l Wildlife Fed'n,*, 497 U.S. at 886.

With respect to Valley County, the Court has already ruled that "Valley County alleges a concrete injury to its interests in the environment which falls within the zone of interests of NEPA."  *See Memorandum Decision (Dkt. No. 25)* at p. 7.  However, because this case is now at the summary judgment stage, Valley County "can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Defenders of Wildlife*, 504 U.S. at 561 (internal quotation marks and citation omitted). The Court concludes that the Motion for Summary Judgment and accompanying Statement of Facts, which Valley County has joined, set forth adequate facts to substantiate Valley County's standing at this stage.  In particular, the Statement of Facts alleges that the Forest Service incorrectly assumed that prior to the 2008 EIS/ROD Big Creek - Yellow Pine roads had been closed to motorized traffic.  *See Statement of Facts (Dkt. No. 27-2)* at ¶¶ 28-34. These facts, taken to be true for standing purposes, support Valley County's allegation that the Forest Service failure to recognize that roads were previously opened causing it to ignore potential environmental impact from closing the roads.  *See Complaint (Dkt. No.*

**Memorandum Decision - 10**

*1)* at ¶¶ 140-42.  In turn, the failure to keep those roads opened will result in a concrete

injury to its interests in the environment which falls within the zone of interests of NEPA/

**Mootness**

The Forest Service contends that IRC's claims are moot.  "[A]n issue is moot when

deciding it would have no effect within the confines of the case itself."  *Tur v. YouTube,*

*Inc.*, 562 F.3d 1212, 1214 (9th Cir. 2009) (per curiam).  IRC's claim is moot, the Forest

Service argues, because (1) relief, even if granted, would leave in place a ban on use of

undesignated trails and (2) the Forest Service is currently engaging in a process to

potentially open undesignated routes.  The Court disagrees with each contention.

The Forest Service's first argument is that if the Court were to vacate the 2010

DN/FONSI this would leave the 2008 ROD in place.  Because the 2008 ROD also

prohibits travel on the undesignated roads, the Forest Service maintains that the Court

cannot grant "effective relief."  *Id.* at 1213 (internal quotation marks omitted).  But this

argument overlooks IRC's request that the Court vacate the 2008 ROD as well as the

2010 DN/FONSI.  If both Forest Service orders were vacated in the Big Creek - Yellow

Pine area, pending a new environmental assessment, IRC contends that motorized access

would be governed by the 1995 TMP, which allows public use of the undesignated roads.

Thus, as the Court has suggested in another context, "the Court could offer effective relief

by ordering the agency to restart the rulemaking process and adequately describe the no

**Memorandum Decision - 11**

action alternative." *Am. Independence Mines and Minerals Co. v. U.S. Dep't of Agric.*, 733 F. Supp. 2d 1241, 1255 (D. Idaho 2010).

The Forest Service's argues next that it is currently in the midst of a route designation review process that cures any defects in NEPA compliance alleged by IRC. The Forest Service relies on the commitment of its Forest Supervisor, expressed in the 2010 FONSI, to consider individual route designations in the Big Creek - Yellow Pine area.  As explained by the Forest Supervisor "[t]he Krassel Ranger District would like to have the opportunity to work with interested parties in a collaborative process in order to come to a decision that could potentially add additional motorized routes, while maintaining consistency with the Forest Plan."  *See* FS033685.

This process, whatever its merits, does not remedy the procedural defects alleged by IRC, and thus does not moot its claims. The Forest Supervisor's willingness to "potentially" open additional motorized routes is not analogous to the relief requested by IRC, which includes (1) a comprehensive re-evaluation of road designation with accurate assessment of historic patterns of use of undesignated roads, (2) an environmental review that gives consideration to several factors that IRC alleges were have not been properly addressed in the Forest Service's environmental review, and (3) a return to the 1995 Travel Management Plan for the Big Creek - Yellow Pine area pending the completion of a new environmental assessment.

**NEPA Claims**

IRC argues that the 2008 EIS/ROD and the 2010 EA/FONSI were arbitrary or capricious because they (1) incorrectly treated unclassified roads as closed at the inception of the environmental review process and as a result failed to include an alternative that allowed continued use of unclassified Big Creek - Yellow Pine roads, and (2) failed to properly address the value of the unclassified Big Creek - Yellow Pine roads for recreational opportunity, public safety, general access, socioeconomic value to neighboring communities, and access to natural and cultural resources. The Court will consider each argument in turn.

Though IRC focuses almost entirely on the 2008 FEIS/ROD, it is the 2010 EA/FONSI that currently constitutes Forest Service policy on road designation in the Big Creek - Yellow Pine Area.  The Court therefore first considers IRC's arguments in the context of the 2010 EA/FONSI.

**1.	The "No Action" Alternative and Unclassified Roads**

NEPA requires federal agencies to "[s]tudy, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42 U.S.C. § 4332(2)(E). Each assessment must include a "no action" alternative. 40 C.F.R. § 1502.14.  "The no action alternative is meant to provide a baseline against which the action alternative . . . is evaluated." *Ctr. for Biological Diversity v. U.S. Dep't. of Interior*, 623 F.3d 633, 642 (9th Cir. 2010). "The touchstone for [the Court's] inquiry is whether an EIS's selection and

discussion of alternatives fosters informed decision-making and informed public participation." *Westlands Water Dist. v. U.S. Dep't. of Interior*, 376 F.3d 853, 868 (9th Cir. 2004) (internal quotation marks omitted).  NEPA does not require the agency to conduct "a separate analysis of alternatives which are not significantly distinguishable from alternatives actually considered, or which have substantially similar consequences." *Headwaters, Inc. v. Bureau of Land Mgmt.*, 914 F.2d 1174, 1181 (9th Cir. 1990).

   IRC's central argument is that the Big Creek - Yellow Pine area was never closed to off-road motorized use at any time prior to the issuance of the 2008 ROD.  In IRC's view, the area was opened to off-road motorized use by the 1995 TMP and Travel Map and the Forest Service never issued a valid order prohibiting off-road motorized use prior to the 2008 ROD.  Thus, the "no action" alternative in the 2008 FEIS constituted an unacknowledged change in Forest Service policy.  Even though the 2008 ROD did not result in the selection of the no action alternative, IRC contends the failure of the FEIS to accurately identify the status quo condition tainted the comparison of alternatives and rendered the election of Alternative E arbitrary or capricious, since none of the potential alternatives actually considered maintaining the status quo condition of unregulated motorized use of undesignated trails in the Big Creek -Yellow Pine area.  Finally, IRC contends that this error was only compounded by the subsequent 2010 EA/FONSI, which characterized the ban on off-road vehicle use created by the 2008 ROD as the status quo condition.

**Memorandum Decision - 14**

IRC thus put two issues before the Court: (1) Whether the 2008 FEIS accurately described the status quo condition, i.e., did the Forest Service validly close the Big Creek - Yellow Pine area to off-road motorized use prior to 2008?; and (2) If the Big Creek - Yellow Pine area was in fact open to off-road motorized use prior to 2008, whether this error in the characterization of the 2008 FEIS no action alternative was significant enough to render the management decision announced in the 2010 EA/FONSI arbitrary or capricious.

The parties devote considerable argument to the first question, i.e., whether the Forest Service legally closed the Big Creek - Yellow Pine area to off-road motorized vehicles prior to 2008. While the Court agrees that this is a difficult question,[2] it disagrees that determining the legality of off-road vehicle use in the Big Creek - Yellow Pine area

---

[2]       Both parties agree that under the 1995 Travel Plan and Travel Map, the Big Creek - Yellow Pine area was not closed to off-road motorized vehicles. The Forest Service contends that the 1995 Travel Map was supplanted by the issuance of a "*Backroads* Map" that, beginning in 2000, showed the Big Creek - Yellow Pine Area as "CLOSED Yearlong " to all cross country motorized use other than bicycle. *See, e.g.*, FS033979 (2004 *Backroads* Map). IRC contends the *Backroads* Maps were not valid closure orders and were not displayed "in such locations and manner as to reasonably bring the prohibition to the attention of the public" as required by 36 C.F.R. § 261.51.

Even assuming the Forest Service followed the necessary process, the *Backroad*s Maps are ambiguous as to whether they were intended to effect an area closure. On the one hand, the front page of the map displays, in large font, the phrase "Travel Map Revision." FS033974. It also states that, "This publication is designed to help identify . . . any changes in the travel plan that have occurred over the past year." On the other hand, it emphasizes, "Keep in mind that this publication is only a general guide. The 1995 Forest Visitor/Travel Map provides more detailed information, such as closed roads . . . . This BACKROADS publication needs to be used in conjunction with the 1995 Forest Visitor/Travel Map." *Id.*

The Forest Service also point to a 1997 Special Order that prohibits "[u]sing any motor vehicle off of Forest Development Roads" on "roads, trails and areas, described in this order." But the Order relies exclusively on several maps to describe the closure, including the "Payette National Forest, McCall and Krassel Ranger Districts Map, 1995 Edition." The Forest Service does not direct the Court to this map, and it is not clear if it can be found in the administrative record, which is contained on several CDs. IRC contends that this map is the same as the 1995 TMP, which does not show the Big Creek - Yellow Pine area as closed to motorized vehicles.

**Memorandum Decision - 15**

between 1997 and 2008 is essential to its review of the NEPA process at issue here.  The purpose of the no action alternative, as with NEPA's requirement that the agency consider multiple alternatives, is to facilitate comparison of "the *environmental impacts* of the proposal and the alternatives."  40 CFR § 1502.14 (emphasis added).  A Forest Service error in describing the legal regulations governing an area of the PNF does not amount to a violation of NEPA so long as the environmental assessment nonetheless adequately "fosters informed decision-making and informed public participation."  *Westlands Water Dist.,* 376 F.3d at 868.  In other words, even if the Forest Service erred in concluding that it had closed the area, that would invalidate the 2010 EA/FONSI only if it skewed the agency's assessment of baseline environmental impacts or usage patterns in such a way as to render the comparison of alternatives arbitrary or capricious.  *See Te-Moak Tribe of Western Shoshone of Nev. v. U.S. Dep't of Interior*, 608 F.3d 592, 600 (9th Cir. 2000) ("NEPA's ultimate focus is on the assessment of environmental impacts and a project's details are usually a means to that end.").

The Court thus assumes without deciding that the Forest Service did not legally close the Big Creek - Yellow Pine area to off-road motorized use prior to 2008 and turns to the central inquiry: Whether the 2010 EA/FONSI discussion of alternatives was adequate to facilitate informed decision-making and public participation.  *Westlands Water Dist.*, 376 F.3d at 868.  Because the 2010 EA/FONSI explicitly considered the designation of undesignated roads as an alternative and examined the environmental impacts stemming from the use of undesignated roads in the area, the Court concludes

**Memorandum Decision - 16**

that the discussion of alternatives was adequate under NEPA.

First, the Forest Service undertook the 2010 EA/FONSI *because* it recognized that there was some public disagreement about the pre-2008 status of undesignated roads in the Big Creek - Yellow Pine area.  The Forest Supervisor acknowledged this in the 2008 ROD and committed the Forest Service to site specific environmental assessment to consider designation of some of the undesignated roads in the area. FS019669.  The 2010 EA/FONSI process was instigated to compare the options that IRC contends the 2008 FEIS/FONSI ignored: closure of undesignated roads in the Big Creek - Yellow Pine area versus their designation for use by motorized vehicles.  This fact alone significantly undercuts IRC's argument that the 2010 EA/FONSI somehow exacerbated the alleged error in the 2008 FEIS/ROD.

Second, and most significant, the 2010 EA/FONSI compared alternatives designating from zero miles of certified roads to designating approximately one third of the undesignated roads in the area.  Alternative A, designated the "no action" alternative, kept the 2008 ROD in place and designated no new roads.[3]  Alternative B proposed designating 13.5 miles of currently undesignated roads for motorized use and Alternative C proposed designating 26.6 miles.  FS033513-14.

The Forest Service found that Alternatives B and C were both unworkable due to their cost and environmental impacts.  With regard to cost, the Forest Service concluded

---

[3]      The Court notes that, as a technical matter, the 2010 EA/FONSI did accurately describe the status quo condition, given that the 2008 ROD had unambiguously closed the area to off-road vehicle use.

**Memorandum Decision - 17**

that (1) Alternatives B and C were more expensive than Alternative A; (2) budget allocations for road maintenance "have historically been minimal"; (3) the funding of Alternative B "is likely not feasible"; (4) the funding of Alternative C "is considered unrealistic"; and (5) "[e]ven complete funding of Alternative A is problematic." FS033547.  With regard to environmental impacts, the Forest Service concluded that additional route designation would impede restoration of water quality in the area and adversely affect several fisheries.  FS033686-88.

      IRC argues that the analysis would change depending on whether the Forest Service was (1) assuming roads were closed and deciding whether to open roads or (2) assuming roads were open and deciding whether to close roads.  But the analysis just discussed regarding costs and environmental impacts would not change – either way, the undesignated roads were too expensive and too harmful.

      IRC does not challenge the Forest Service's conclusions on cost and environmental impacts.  Instead, it contends that the Forest Service should have considered leaving the entire area open to unregulated off-road use, or should have considered designating all of the undesignated trails in the area.  However, the Forest Service is not required to separately analyze alternatives which have "have substantially similar consequences" to those alternatives actually considered.  *Headwaters, Inc.*, 914 F.2d at 1181.  Given the Forest Service's undisputed finding that designating a limited number of routes would be unrealistically expensive and harm the environment, the agency was not obliged to consider designation of an even greater number of roads.

**Memorandum Decision - 18**

Third, the administrative record shows that the Forest Service's review included consideration of surveys of undesignated roads, their use, and the environmental impact of that use.  In particular, both travel analyses relied principally on a 2002 survey which measured "road distance, number of stream crossings, erosion points, drainage features, width and gradient of the roadbed, presence of vegetation in the roadbed, and type of access."  *See* FS0330996.  The EA referenced the same 2002 study, which was supplemented by three field trips taken during 2009. FS033586-87. Surveys also assessed the usage rates of undesignated roads.  *See* FS033588 ("During field evaluation of these [undesignated] routes, use levels were determined to be light. In mid July, some of the routes still had blow down across the travel way that had not been cut out.").  The EA thus considered usage patterns on undesignated roads, including during the pre-2008 window which IRC contends constituted the period that should have been regarded as the baseline condition against which the proposed alternatives were measured.

Further, this survey data and the assessment of the environmental impact of the pattern of use of undesignated roads was central to the no action recommendation of the EA and the selection of this alternative in the FONSI.  Both documents noted that a 2009 study reported that the watershed condition indicator (WCI) for many of the streams in the area were "functioning at risk" (FR) or "functioning at unacceptable risk" (FUR).  As the administrative record documents, motorized vehicle use, particularly on roads with stream crossings or that run along streams, negatively contributed to these watershed conditions.  *See* FS033567.  The EA noted that the negative environmental impacts of

**Memorandum Decision - 19**

ongoing use of the undesignated roads were increasing:

> In the project area many routes not designated for public motorized use were indeed
> receiving such use. The motorized use of many of these routes was on-going and
> technically represented trespass. Although these undesignated routes have been
> receiving use, there has been no official or formal maintenance. As a result, resource
> conditions have continued to degrade. In some situations there has been a substantial
> deterioration of the road- or trail-bed due to this lack of maintenance and continued
> use.

*See* FS033574.  Thus, the FONSI elected to prohibit the off-road motor vehicle use which

has played a role in poor watershed conditions in the area and which, the Forest Service

concluded, would be exacerbated by the road construction and maintenance activities that

would be required if the roads were designated.  *See* FS033686-88.  In short, the

administrative record refutes IRC's assessment that the Forest Service ignored the history

and environmental impact of off-road vehicle use in the study area.

The Ninth Circuit's decision in *Kilroy* offers strong support for the Court's

conclusion that the Forest Service's comparison of alternatives was adequate in this

instance. There, the plaintiffs challenged the EIS for the City of Los Angeles's

wastewater treatment plan. *Kilroy*, 738 F.2d at 1450-51. That EIS described the "no

action" alternative as one of dewatering the sewage sludge and trucking it in solid form to

a waste dump. *Id.* at 1453.  However, in actuality the status quo policy was to discharge

the sludge into the ocean through an outfall pipe and the dewatering policy was a

proposed interim policy that had never actually been adopted. *Id.* at 1451.

Despite this error, the *Kilroy* court nonetheless held that the EIS met NEPA

requirements for two reasons.  First, the EIS "includ[ed] some discussion of the existing

**Memorandum Decision - 20**

outfall disposal method" because the interim project contemplated use of the outfall pipe when sludge exceeded dewatering capacity. *Id.* at 1453.  Second, the court noted that an amendment to the Clean Water Act as well as a consent decree entered into by the City of Los Angeles prohibited outfall disposal after the current outfall permit expired. *Id.* at 1453-54.  The court explained that "in deciding whether an alternative is reasonable, we may certainly take into account the strength and vitality of legislation that forbids it." *Id.* at 1454.

Both of these factors support the reasonableness of the Forest Service's assessment here.  As discussed above, the EA considered, based upon available survey and environmental data, the consequences of off-road vehicle use in the area.  Further, as in *Kilroy*, the Forest Service review was conducted against the backdrop of a national regulatory change that prohibited unregulated off-road use of motorized vehicles.  In *Kilroy*, amendments to the Clean Water Act prohibited future use of outfall disposal of sludge. *Id.* at 1453-54.  Here, the 2005 Travel Management Plan required the Forest Service to "to undertake a process by which routes were designated and cross-country travel eliminated." *Wilderness Soc. v. U.S. Forest Service*, -- F. Supp. 2d --, 2012 WL 551005, at *9 (D. Idaho Feb. 21, 2012); *See* 36 C.F.R. § 261.13.  The Travel Management Plan does not take a position as to whether designation or closure is the preferred alternative.  *See* 70 Fed. Reg. 68268 ("The Department believes that evaluation of user-created routes is best handled at the local level by officials with first-hand knowledge of the particular circumstances, uses, and environmental impacts involved").

**Memorandum Decision - 21**

Nonetheless, the Travel Management Rule prohibits a return to a condition of unrestricted off-road motorized vehicle use after the designation process in which the Forest Service was engaged.  Thus, the status quo alternative of unregulated use that IRC argues the Forest Service did not adequately consider was one that was precluded by a new nationwide regulation. As in *Kilroy*, this regulatory backdrop meant "it would be unreasonable and wasteful to require extensive development and discussion of such a remote alternative."  *Kilroy*, 738 F.2d at 1455.

## 2. Hard Look at Environmental Consequences

An EA must include a "brief discussion" of "the environmental impacts of the proposed action and alternatives." 40 C.F.R. § 1508.9(b).  The Court applies the "rule of reason," in evaluating whether an environmental assessment contains a "reasonably thorough discussion of the significant aspects of probable environmental consequences." *Neighbors of Cuddy Mt. v. U.S. Forest Serv.*, 137 F.3d 1372, 1376 (9th Cir. 1998) (internal quotation marks omitted).

IRC presents a laundry list of issues it contends were not discussed or were inadequately discussed: public safety, general access, recreational opportunity, access to natural and cultural resources, and socioeconomic impacts.  Though IRC superficially alleges that these are deficiencies of both the 2008 FEIS/ROD and the 2010 EA/FONSI, it does not specifically identify any deficiency in the 2010 EA/FONSI.  *See IRC Brief (Dkt. No. 27-1)* at p. 31.  In fact, the EA discusses and evaluates each issue that IRC claims was overlooked.  *See* FS033502 (public safety); FS033502-03 (general access); FS 33501-02

**Memorandum Decision - 22**

(socioeconomic impacts); FS033573-74 (recreation opportunities); FS 330502 (natural resources). IRC does not raise any alleged inadequacy in these sections of the EA, and the Court concludes, upon its review, that the discussion of each of these consequences was reasonably thorough. *See Neighbors of Cuddy Mt.*, 137 F.3d 1372, 1376.

**3.     The 2008 ROD/EIS**

Though IRC focuses its arguments on the alleged inadequacies of the 2008 ROD/EIS, the 2010 EA/FONSI, promulgated in the midst of this litigation, is now the final agency action setting policy on motorized vehicle use in the Yellow Pine - Big Creek area. When an intervening event prevents the Court from granting effective relief, a request for relief becomes moot. *Calderon v. Moore*, 518 U.S. 149, 150 (1996). That is the case here. IRC's request that the Court vacate the 2008 FEIS/ROD is moot because that rule is no longer in effect. *See Theodore Roosevelt Conservation Partnership v. Salazar*, 661 F.3d 66, 79 (D.C. Cir. 2011) ("We can neither invalidate, nor require the [agency] to adhere to, a Record of Decision that has disappeared into the regulatory netherworld"). Even if IRC is correct that the 2008 FEIS/ROD process violated NEPA procedures with respect to the rule set in the Big Creek - Yellow Pine area, the Court "can grant no relief that would 'undo' the operation of the [ROD] during the period between issuance" of the 2008 ROD and the 2010 EA. *Aluminum Co. of Am. v. Adm'r, Bonneville Power Admin.*, 175 F.3d 1156, 1163 (9th Cir. 1999).

The Court notes that, in some circumstances, "dilatory or ex post facto environmental review cannot cure an initial failure to undertake environmental review."

**Memorandum Decision - 23**

*Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 785 (9th Cir. 2006). This rule applies

when the agency delay in conducting a proper environmental review skews the process or

outcome of the environmental review process. Thus, in *Pit River Tribe*, the court held

that federal agencies should have prepared an EIS that considered denying the extension

of leases authorizing Calpine to develop geothermal resources on federal land. *Id.* at 784.

The court rejected the argument that a subsequent EIS approving construction of a

particular geothermal plant mooted the earlier failure to prepare an EIS, since the tardy

EIS did not address the central issue that should have earlier been addressed: "[W]hether

the land in question should be leased at all." *Id.* at 786. And in *Metcalf v. Daley*, 214

F.3d 1135, 1143-44 (9th Cir. 2000), the court held that an EA addressing agency approval

of the hunting of gray whales by the Makah Tribe was inadequate because it was

conducted after the agencies had already entered into two written agreements supporting

the Tribe's proposal to resume hunting. There, the agencies' actions violated NEPA

because the signing of the agreements with the Tribe constituted an "an irreversible and

irretrievable commitment of resources" that tainted the consideration of environmental

consequences, as required by NEPA. *Metcalf*, 214 F.3d at 1145 (internal quotation marks

omitted).

  To the degree that IRC raises this argument, there is no indication that the 2010

EA/FONSI was similarly distorted by the 2008 FEIS/ROD decision. Unlike *Pit River*

*Tribe*, the 2010 EA here thoroughly considered the core comparison that IRC alleges the

2008 FEIS/ROD overlooked, i.e., whether undesignated roads in the Big Creek - Yellow

**Memorandum Decision - 24**

Pine area should be designated or closed.  *Pit River Tribe*, 469 F.3d at 786.  As the Court

has explained, regardless of any continued failure of the 2010 EA to acknowledge the

legality of off-road vehicle use from 2000-2008, it adequately considered the history and

environmental impact of off-road use during that time.  Further, the 2008 FEIS/ROD did

not involve a commitment of resources that "predisposed" the Forest Service to select the

no action alternative from the 2010 EA.  *Metcalf*, 214 F.3d at 1146.  The 2008 ROD, in

adopting the no action alternative, did not set into motion the expenditure of resources or

otherwise improperly wed the agency to a policy precluding consideration of route

designation in the future.  In short, the 2010 EA/FONSI cured the alleged NEPA

violations of the 2008 FEIS/ROD.

**NFMA & TMR Claims**

IRC argues that the Forest Service failed to consider the Forest Plan and thus

violated NFMA.  IRC's arguments on these points were all rejected above, and so

summary judgment on this claim is warranted for the Forest Service.  The same result

follows for IRC's claims under the TMR.

## CONCLUSION

For the reasons stated, the Court will deny IRC' motion for summary judgment and

will grant the Forest Service's motion for summary judgment.  The Court will enter a

separate Judgment pursuant to Rule 58(a).

DATED: **July 27, 2012**



Honorable B. Lynn Winmill
Chief U. S. District Judge